1          IN THE UNITED STATES DISTRICT COURT FOR
            THE WESTERN DISTRICT OF WASHINGTON
2                      AT SEATTLE

3   UNITED STATES OF AMERCIA,        )
                                     )  Case No. CR04-543RSM
4            Plaintiff,              )
                                     )  Seattle, Washington
5        v.                          )
                                     )  January 6, 2006
6   MATTHEW JONES,                   )
                                     )  SENTENCING
7            Defendant.              )
                                     )
8   _____)

9


10
                    TRANSCRIPT OF PROCEEDINGS
11         BEFORE THE HONORABLE RICARDO S. MARTINEZ
                  UNITED STATES DISTRICT JUDGE
12


13

14  For the Plaintiff:       DON CURRIE, AUSA

15
    For the Defendant:       ALAN ELLIS, ESQ.
16

17

18

19
    SUSAN A. ZIELIE, RPR, CCR
20  Official Court Reporter
    U.S. Courthouse
21  700 Stewart Street
    Seattle, Washington 98101
22  (206) 370-8509

23  Proceedings recorded by computer-aided stenography.

24

25

1           SEATTLE, WASHINGTON; FRIDAY, JANUARY 6, 2006

2                         2:00 P.M.

3           THE CLERK:  This is the scheduled oral

4   argument on defendant's motion to withdraw plea in cause

5   No. CR04-543 assigned to Judge Martinez, United States

6   vs. Matthew Daniel Jones.  Will counsel please rise and

7   make their appearances.

8           MR. CURRIE:  Don Currie on behalf of the

9   United States.

10          THE COURT:  Mr. Currie.

11          MR. ELLIS:  And Alan Ellis on behalf of Matt

12  Jones.

13          THE COURT:  Mr. Ellis, thank you.

14          MR. ELLIS:  Yes.

15          THE COURT:  We are here today scheduled to

16  hear the motion on behalf of Mr. Jones to withdraw his

17  plea of guilty that was entered some time ago.  The

18  Court has received and reviewed the defendant's moving

19  documents, has reviewed the government's response, has

20  reviewed the reply, has reviewed the supplemental, has

21  reviewed the case law submitted by all parties.

22          Mr. Currie, I fully understand that this was

23  Ms. Frierson's case, not yours.  However, counsel, is

24  there anything at this point in time -- it's Mr. Jones's

25  motion, I'm going to ask Mr. Ellis to go first, but is

1    there anything that you have submitted that the Court

2    has not reviewed?

3            MR. CURRIE:  The government simply submitted

4    the original response and the supplemental response.

5            THE COURT:  Thank you.

6            Mr. Ellis, it's your motion.

7            MR. ELLIS:  Yes, Your Honor.  Did Your Honor

8    receive again our original response and our supplemental

9    response?

10            THE COURT:  I did.

11            MR. ELLIS:  May it please the Court, I think

12    everything is very well laid out in our final

13    submission, our supplemental response.  And, quite

14    frankly, I have nothing to add to it, unless the Court

15    has any questions.

16            THE COURT:  I do not have any specific

17    questions.  Thank you.

18            Mr. Currie, anything else on behalf of the

19    government?

20            MR. CURRIE:  Yes.  I would like to address

21    the Court just briefly, if I may.

22            May it please the Court, the government

23    opposes the motion.  The defendant has the burden of

24    showing that there is a fair and just reason to withdraw

25    his plea.  And the government respectfully submits that

1    the defendant has simply not shown a fair or just reason

2    why the plea should be withdrawn.

3         The sorts of things outlined in the cases

4    that the Court should look to in determining whether a

5    fair and just reason has been given are such things as

6    an inadequate Rule 11 plea colloquy, newly discovered

7    evidence, intervening circumstances, or any other reason

8    for withdrawing the plea that did not exist when the

9    defendant entered his plea.

10        Here, there are simply none of these things

11   suggested to the Court.  In this case, there was an

12   adequate plea colloquy.  There is no newly discovered

13   evidence presented to the Court.  There are no

14   intervening circumstances suggested to the Court, other

15   than the indication by the defendant that he now

16   believes that the case -- that the law suggests that on

17   the facts that were raised at the time of the entry of

18   the plea he is innocent.

19        THE COURT:  That is, by the way, Mr. Currie,

20   a claim -- a claim of legal innocence has been allowed

21   by the Ninth Circuit.  I believe it was Ortega Ascanio

22   as a fair and just reason for allowing the withdrawal.

23        MR. CURRIE:  But I think that is the case in

24   which there was intervening Supreme Court case law that

25   triggered the defendant's new defense that he wished to

1    raise.

2           In this case, there is no such intervening

3    case law.  The facts are exactly the same.  The

4    defendant relies on his protestation that, at the time

5    that he received the money from the victims, he took the

6    money in good faith.  He now says I took the money in

7    good faith but now I believe that the law requires that

8    there be a specific false statement proven that would

9    influence a person to part with their money.  That,

10   frankly, is a misstatement of the law.  Wire fraud does

11   not require a specific false statement.  Wire fraud can

12   be based upon a scheme or artifice to defraud and a

13   mailing in furtherance of that scheme, or it can be

14   based on a different ground, which is a scheme to obtain

15   money or property by means of false pretenses or

16   representations.  The facts that were admitted to at the

17   plea hearing supported the first of those theories, a

18   scheme or artifice to defraud and a wire transmission in

19   furtherance of that scheme.

20          So the very basis on which the defendant now

21   claims that he should be entitled to withdraw his plea

22   is based on a misunderstanding of the law, a

23   misstatement of the law, and based on the very same

24   facts that were discussed at the time of the plea

25   hearing.

1          This case, in the government's view, is a
2   case in which the defendant wishes to withdraw his plea
3   simply because he's had a change of heart.  And the case
4   law that is cited in the government's memoranda makes
5   clear that a change of heart is not a fair and just
6   reason for withdrawing a guilty plea.
7          One of the facts on which the government
8   argues that the guilty plea or the motion to withdraw
9   the plea is based on a change of heart, the timing of
10  the motion, first of all.  This motion was filed on the
11  eve of sentencing after the Presentence Report had been
12  issued when it was apparent that in all likelihood the
13  defendant would be sentenced to a significant term of
14  imprisonment, at a time when it was apparent that Mr.
15  Jones would not be returning to Norway any time soon.
16  Now, it's true that the Court cannot deny a motion for
17  withdrawal simply on the basis of the timing of the
18  motion.  That's clear.  But this is just one of the
19  factors on which the government believes that the
20  withdrawal motion is based on a change of heart.
21         What are the other factors on which we claim
22  that there was a change of heart?  He's relying on the
23  very same facts now that he was relying on before.
24         Additionally, he makes an unbelievable claim
25  that he was told that he could actually spend the money

1    that he misapplied, directly contrary to his agreement

2    and his attorney's statement at the time of the plea

3    that the funds had been obtained in good faith but then

4    applied unlawfully or spent unlawfully.

5              And then, finally, we learn in the latest

6    submission by the defendant that he hasn't made up his

7    mind yet whether or not he's going withdraw his plea.

8              And, in the government's view, all of these

9    factors demonstrate that this is simply a motion brought

10   based upon the defendant's change of heart facing

11   imminent sentence and attempting to delay the process.

12   The government respectfully requests that the motion be

13   denied.

14             THE COURT:  One final question before you

15   stand down, counsel.  Is there any prejudice to the

16   government in this case by the Court allowing him to

17   withdraw his plea of guilty?

18             MR. CURRIE:  As the Court has noted, I'm

19   relatively new to this case, so I'm not conversant with

20   all of the facts of the case, and I could only state in

21   a general way that the prejudice would be the difficulty

22   in re-assembling its profits, contacting witnesses,

23   getting the case ready for trial.

24             THE COURT:  Thank you, counsel.

25             MR. ELLIS:  May I respond briefly, Your

1    Honor?

2              THE COURT:  Certainly, Mr. Ellis.  Mr.

3    Ellis, I want to know from you what Mr. Jones's position

4    at this time point in time is.  Does he still in fact

5    wish to withdraw his plea of guilty?

6              MR. ELLIS:  No.  He wishes leave, as we've

7    always said, to withdraw his plea.  As I said in our

8    final submission, if the Court were to grant him leave

9    to withdraw his plea, he'd like Mr. Erwin Schwarts, who

10   the Court I'm sure is well familiar with, has graciously

11   volunteered to review the file and to tell Mr. Jones

12   whether in his professional opinion he ought to in fact

13   go ahead with withdrawing his plea or whether in fact he

14   ought to just basically stand pat and proceed to

15   sentencing.

16              As I told the Court all along, I'm not a

17   trial lawyer.  I mean, it's very hard for me to really

18   advise a client whether or not how a jury -- now, I

19   don't know whether this case is ever going to get to a

20   jury and survive a Rule 29 motion.  But I know the Court

21   was concerned about whether or not Mr. Jones had been

22   adequately counseled; and, understandingly so, because

23   I've conceded that I am not a trial lawyer, and I

24   certainly don't now see how juries respond -- I don't

25   know how juries respond, period, anywhere.  But, as far

1  as there not being -- there being a proper colloquy, but

2  there wasn't a proper colloquy, there's no factual

3  basis.  And, recently, Judge -- and I hope I don't

4  butcher his name too badly -- Judge Cocknour --

5          THE COURT:  Coughenour.

6          MR. ELLIS:  -- was reversed by the Ninth

7  Circuit on very similar grounds on a case where the

8  defendant did not file the motion pre-sentencing, as Mr.

9  Jones has, where the standard is a liberal standard, but

10 raised it on a plain error standard, and in fact all

11 bases, and the Ninth Circuit reversed.  And I think that

12 once Mr. Malone got up and said, Look, this is what we

13 admit doing, but we acted in good faith at the

14 beginning, and the learned magistrate judge turned to

15 the prosecutor, Ms. Frierson, and says, What say you,

16 and she says, I agree, at that point, in all due

17 respects, I think the magistrate judge should have said

18 time out, I'm not sure that I can take this plea.  But,

19 you know, I know how it is, magistrate judges rely upon

20 counsel, and justifiably so.  So that's all I have to

21 say.

22          THE COURT:  Thank you, Mr. Ellis.  Let me

23 just point out that the case on which Judge Coughenour

24 was reversed was a completely different factual pattern.

25 In that case, the government conceded at the time of the

1    appellate argument that in fact the factual basis as set

2    out in that was to be a 924(c) gun count, did not

3    contain the necessary elements for conviction because

4    there was no evidence at all, nothing admitted by the

5    defendant that indicated he possessed the gun with the

6    intent to further a drug offense.  That's quite a bit

7    different than what we have in this case.

8           Counsel, I understand that he is asking

9    leave to think further about whether or not he wishes to

10   withdraw the plea.  The only way I can construe that at

11   this point in time, the Court is not inclined to give

12   him that leave.

13          So I am construing this as a motion to

14   withdraw his plea of guilty.  Do you want me to go

15   through the analysis the Court goes through in making

16   that determination at this point in time?  Mr. Ellis?

17          MR. ELLIS:  Pardon me, Your Honor?  I'm not

18   quite understanding what the Court is --

19          THE COURT:  I'm not quite sure where we are

20   at this point in time.  The way I construe your latest

21   submittal to the Court, Mr. Jones still at this point in

22   time, today, as of right now, is not quite sure whether

23   he wishes to withdraw the plea or not, he simply wishes

24   more time to consult with yet counsel No. 4 as to

25   whether or not he should withdraw his plea.

 1              MR. ELLIS:  Well, the motion was originally
 2    captioned a motion to withdraw -- for leave to withdraw
 3    the plea of guilty, which if the Court granted the
 4    motion is I grant you leave to withdraw or continue your
 5    plea.
 6              THE COURT:  All right.  Then, in that case,
 7    counsel, the Court will deny his motion for leave to
 8    consider even further as to whether or not he should
 9    withdraw his plea.
10              MR. ELLIS:  In that case, we'll go back to
11    our Plan B, which is allow him to withdraw the plea.
12              THE COURT:  All right.  Let me indicate, I
13    think it's important for our record to reflect some
14    undisputed facts as background here.
15              Mr. Jones was indicted on one count of wire
16    fraud and three counts of money laundering, and he
17    entered his -- initially, plea colloquy was held before
18    Magistrate Judge Mary Alice Theiler on June 16 of 2005.
19    His plea was accepted by me on July 5, 2005, following a
20    period of time during which he had the absolutely right
21    to withdraw if he so wanted for no reason, no reason
22    even needed to be given.  Sentencing was scheduled
23    before this Court for September 2, 2005.
24              Sentencing was then continued at the request
25    of the defendant.  The sentencing date was set then to

1    October 14, 2005.

2              Two days before that, on October 12th, Mr.

3    Jones moved the Court to continue sentence once again,

4    over the government's objection.  The Court did so, and

5    scheduled sentencing for December 9, 2005.

6              One week prior to that date, on December 1,

7    2005, Mr. Jones once again moved to continue the

8    sentencing date.  Once again the government objected,

9    this time adding that the numerous victims of this wire

10   fraud have a right for a final disposition in this case.

11   And she also stated -- Ms. Frierson stated at that point

12   in time that this was not a case where the defendant was

13   contesting his guilt, and that no motion to withdraw his

14   plea of guilty had even been made, for example.  And, as

15   a result, two days later -- excuse me, two days before

16   the sentencing date of October 9th, the defendant filed

17   the instant motion to withdraw his plea of guilty.

18             That background is important because I

19   think, as the government points out here, timing of the

20   motion is an important factor for the Court to consider.

21   While timing in and of itself is not sufficient in

22   making a decision whether or not there was a fair and

23   just reason to allow that withdrawal, it is a factor.

24             As I understand it, the basis for his

25   wanting to withdraw his plea is that he misunderstood

the elements that the government was required to prove
to sustain a conviction, and now that he truly
understands the elements he believes he is now innocent.
He makes reference to the Ninth Circuit Pattern Criminal
Jury Instruction, I believe it's 8.1.1, where he claims
that the government has to prove the following five
elements to convict him of wire fraud.  First, that he
made up a scheme or plan for obtaining money or property
by making false promises or statements; secondly, that
he knew that those promises or statements were false;
third, that the promises or statements were material,
that is that they would reasonably influence a person to
part with property or money; fourth, that he acted with
the intent to defraud; and, finally, fifth, that he used
or caused to be used the wires, if you will, to carry
out or attempt to carry out an essential part of that
scheme.

          Focusing on paragraph 6 of the superseding
indictment that was filed here, that reference to the
essence of that scheme and artifice to defraud,
defendant now claims that, at the time he told his
victims that he could keep their money in a trust
account, he fully intended to do so.  Therefore, the
second element, that he knew the statement was false, is
not met; and, therefore, he cannot be guilty of the

crime charged.  He further asserts that the subsequent
false statements, which he fully admits to making, do
not support a conviction because they could not
obviously reasonably influence a person to part with
money.

He claims his misunderstanding of the
elements of the wire fraud claimed at the time that he
pled guilty thereby constitute a fair and just reason
for withdrawal of his plea.

Now, as counsel had fully briefed in all of
the materials received by the Court, a defendant may be
permitted to withdraw a guilty plea before sentencing,
assuming he establishes a fair and just reason for doing
so.  That fair and just standard is to be applied
liberally.

But withdrawal is not a right, it's a
decision, that's left to the sound discretion of the
district court.  A claim of innocence supported by
evidence not available at the time of the guilty plea
was entered might and fair and just reason to allow
withdrawal.  But a defendant's mere change of heart or
unsupported claims of innocence are insufficient to
allow him to withdraw that plea.

The Court also should, as I indicated just
briefly, consider how much time has passed between the

1    entry of the plea and the motion to withdraw, and of

2    course look at any potential prejudice to the

3    government's case by allowing the motion to withdraw.

4            In this case, defendant's reliance on the

5    pattern jury instruction, as the government points out,

6    ignores other relevant pattern jury instructions and

7    commentary as well as case law that establishes that the

8    government is not required to prove that any particular

9    false statement was made.  A fraud claim can be

10   supported by either a knowingly false statement or a

11   scheme to defraud.  Defendant claims that the Supreme

12   Court expressly rejected this sort of disjunctive

13   reading of the scheme to defraud case in a case McNally

14   vs. United States.  However, the interpretation

15   disapproved in that case was that a false statement must

16   be about money or property, while a scheme to defraud

17   could reach intangible interests.

18           Incidentally, Congress has since superseded

19   the McNally holding by enacting U.S.C. 1346 stating that

20   Congress intended to expressly overrule McNally.

21           The defendant pointed out that the question

22   before the Court is not whether he could conceivably be

23   convicted even if his promise to deposit the victim's

24   money in the trust account was not false, but whether he

25   has that fair and just reason for wanting to withdraw

his guilty plea.

The Court notes that the facts as admitted in the plea colloquy do support a finding of guilt because he's not claiming any new evidence exists that was not available at the time of the plea was entered, but merely a new theory under which to defend.  The chronology of events here, the Court believes, also undercuts his motion.  Six months have passed since he entered his plea.  The motion for withdrawal was entered only after the third motion to continue sentencing was denied.  Much shorter periods of time held to be contributing factors and denying withdraw.

And, also, defendant, in some of his submittals, claims to have lost confidence in the attorney who represented him at the time of the entry of the plea, Mr. Moen.

In reviewing the transcript of that hearing, he explicitly stated that he was fully satisfied with the representation he had received.

Taken as a whole, this Court believes that his desire to present a defense to the fraud charge appears to be simply a change of heart and does not constitute a fair and just reason to grant a withdrawal. The Court does feel that, as the government points out, this is a part of a well-established pattern and

behavior designed to simply continue or delay resolution

of this case.  His claim of innocence is not supported

by evidence not available at the time the plea was

entered, and, in defense counsel's own word to the Court

here, counsel wrote the issue here is not one of fact

but rather of law.  The Court agrees.  And, if it is an

issue of fact, then his motion and the reason for

requesting the withdrawal to present a defense to the

jury is unnecessary because the jury does not decide

questions of law.  The Court is fully satisfied that the

plea colloquy as reviewed in the transcript was

sufficient.  And, for those reasons, the Court will deny

Mr. Jones's motion to withdraw his plea of guilty.

MR. ELLIS:  May I just say one thing, Your

Honor?  I realize that in federal court one does not

have to state an exception.  But, as far as a delay

issue is concerned, I filed a pro hac vice motion on

October 3rd, which was granted on October 4th.  I have

filed a Motion for Continuance so I could be familiar

with the case, which the Court granted on October 12th.

On a little over two months later, I filed, after

reviewing the case, I filed the motion to withdraw.  So,

as far as delay is concerned, I don't think that two

months is an inordinate time when new counsel has gotten

into the case.  And, indeed, that's what the Garcia case

 1  says.

 2              THE COURT:  Understood, counsel.

 3              Are we ready to proceed to sentencing?

 4              MR. ELLIS:  Yes.

 5              MR. CURRIE:  The government's ready, Your

 6  Honor.

 7              THE COURT:  Mr. Currie, I've read the

 8  sentencing memorandum of the government.  Anything you

 9  would like to add to that particular memorandum?

10              MR. CURRIE:  I think I'll rely on the brief

11  submitted by Ms. Frierson, Your Honor.

12              THE COURT:  Thank you, counsel.

13              Mr. Ellis.

14              MR. ELLIS:  Yes, sir.  The government has

15  recommended a 37 month sentence here.  I'm urging the

16  Court to impose a 24 month sentence for the following

17  reasons.  One, we still maintain Mr. -- I don't think

18  that Mr. Jones is as culpable as he's been made out to

19  be.  Again, I think he was acting in good faith when he

20  took these people's money, the government concedes that

21  he was acting in good faith when he took these people's

22  money.  What he did wrong of course was to convert these

23  people's money and also to lie to them about what

24  happened to the money, that it was frozen offshore.  So

25  I would ask the Court to punish him for what he did and

1      not punish him for what he didn't do.

2              The other thing that I would point out is

3      that, as I proffered at the time of the motion to revoke

4      the conditions of his -- to revoke his supervised

5      release, he has been performing substantial community

6      service over the past couple of months, acting as a

7      voluntary assistant football coach as Ingraham High

8      School in the city here, performing 30 hours of

9      community service.  I think that, while this does not

10     qualify for aberrant behavior downward departure under

11     Booker and 3553, I think this is certainly conduct

12     that's out of character for Mr. Jones.

13             And, finally, it's his cooperation with the

14     authorities in Kansas City as outlined by the very fine

15     letter from the AUSA Dan Stewart in Kansas City.  I

16     think, candidly, that the government should have filed a

17     5(k)1.1 motion in this case.  In light of that, I gave

18     serious concern to filing a motion, a bad faith motion,

19     to compel the government to file a motion, and then I

20     realized that under Booker the Court had the power on

21     its own to impose a sentence below the guidelines based

22     on his cooperation, even though the government didn't

23     file a 5(k)1.1 motion.  So, based on I think what he's

24     guilty of here, in addition to lying to the people about

25     what happened to the money -- and, the way to explain

1    that he panicked, he panicked.  As far as taking the

2    money and not -- when he learned that he couldn't

3    establish a trust account, his position is he told Mr.

4    Burnett, who was associated with him, to tell the

5    investors in group B -- you know there's two investors,

6    there was a group A which he was amongst the originals,

7    their money all went to the scammers in Kansas City, and

8    he was a victim there like anybody else.

9            With respect to the group B buyers, Mr.

10   Jones told Mr. Burnett to tell these people, We tried to

11   set up a trust account, I spoke to Cameron Foster, who

12   was his attorney at the time who helped set up the trust

13   account, tried to set up the trust account.  Mr. Foster

14   advised me, yes, he did in fact try to set up the trust

15   account, the bank just would not go along with it.  At

16   which time, he told Mr. Burnett to tell the group B

17   investors, all of whom had been recruited by Mr.

18   Burnett -- Mr. Jones did not know these people -- to

19   tell these people that they had two options: One, they

20   could have a full refund, or they could let the money

21   ride with him.  Several people demanded a refund.  They

22   were given a full refund, to the tune of about,

23   according to the government's records, about $97,000.

24   And then he says that Dr. Baker told him that, Since we

25   owe you money as a finder, we owe you finder's fees, you

1  can just, instead of our paying you this money, just

2  keep the money right now, and we'll assure you that the

3  cars will be furnished.

4          I would not have done this.  I'm a rather

5  prudent investor or prudent businessman, which is why

6  probably I ain't rich.  I myself would have said, Thank

7  you, Dr. Baker, for your kind advice, I can't set up a

8  trust account so I'm just going to let that money sit in

9  my Wells Fargo bank account earning 1 percent interest;

10 and, when the cars come, then I'll give you the money.

11 He didn't do that.  And that's where I think his failing

12 was.

13         So I'm asking the Court to punish him for

14 what he did, to take into consideration under 3553 his

15 history and characteristics, which include his community

16 service, this out-of-character conduct on his part, and

17 his cooperation with the government in Kansas City,

18 which, according to AUSA Stewart, led to the conviction

19 of the two ring leaders.  Thank you, Your Honor.

20         THE COURT:  Thank you very much, counsel.

21         Mr. Currie, anything you'd like to say at

22 this point in time?

23         MR. CURRIE:  Yeah.  I would just like to

24 point out a couple of things.

25         With respect to the testimony of Mr. Jones

1    in the other case, the fact is that Mr. Jones told the

2    authorities only about that portion of the case that was

3    pending in that district.  Told the authorities nothing

4    about the scam that he worked that is the subject matter

5    of this case.  He didn't voluntarily come forward and

6    provide information with respect to this matter, and it

7    was only based upon the government's investigation that

8    this matter was brought to light and these victims were

9    identified.  So he should not receive any benefit in

10   connection with this case for what he did in the other

11   case regarding other defendants.

12             It should also be pointed out that Mr. Jones

13   started collecting this money in I believe May of 2001,

14   and almost immediately began spending it for his own

15   purposes.  So that this wasn't a scheme that was simply

16   hatched after all the money had been collected, but was

17   a scheme that was on-going, he was bringing money in,

18   spending it for his own purposes, and still collecting

19   it from more victims, to the point that individuals were

20   victimized to the tune of about $1.3 million.

21             Without the -- in light of the refunds that

22   were made, the total amount of restitution that we're

23   asking is I think $1.13 million.  And we have the

24   schedule attached to our proposed judgment reflecting

25   that amount broken down by individual victims.

1          THE COURT:  Counsel, before the Court asks

2    for any comment or statement by Mr. Jones, let me ask

3    our probation officer, after having heard the oral

4    recommendations made by both counsel here, do you have

5    anything to add or change in your Presentence Report?

6          PROBATION OFFICER:  I don't.  I will rely on

7    my Presentence Report and my recommendation.  We are

8    recommending the middle of the guideline range of 42

9    months.  I don't believe this is a bottom of the range

10   because of the factors outlined in my recommendation.

11         MR. ELLIS:  Is that recommendation public,

12   Your Honor?  I've not seen that.

13         THE COURT:  Did you not receive a copy of

14   the Presentence Report?

15         MR. ELLIS:  I did, but I never saw the

16   recommendation.

17         PROBATION OFFICER:  The recommendation

18   should have been attached to the Presentence Report.

19         MR. ELLIS:  Never got it.

20         PROBATION OFFICER:  It was sent to --

21         THE COURT:  Ms. McGlynn, do you have an

22   extra copy there?

23         PROBATION OFFICER:  Sure.

24         MR. ELLIS:  Would Your Honor indulge me for

25   one minute, please?

```
 1                    THE COURT:  Absolutely.

 2                    (Pause in Proceedings.)

 3                    MR. ELLIS:  We're ready to proceed, Your

 4   Honor.  Thank you.

 5                    THE COURT:  Thank you, counsel.

 6                    Counsel, I don't know when you received the

 7   copy of the Presentence Report.  Were you ever given

 8   copies of any of the victim impact statements?

 9                    MR. ELLIS:  No, Your Honor.

10                    THE COURT:  All right.

11                    PROBATION OFFICER:  Your Honor, if I could

12   just comment, the attorney of record in November was

13   Steven Moen, and everything was sent to him.  It was my

14   understanding that everything was passed on to Mr.

15   Ellis.

16                    THE COURT:  That was my understanding as

17   well.

18                    Let me just quickly indicate for the record

19   the Court has received and reviewed victim impacts

20   statements, victim loss statements from about

21   approximately eight or nine different people.  For the

22   benefit of Mr. Jones, let me just indicate, just read

23   through a couple of them.

24                    James Charleston, We put our trust in Matt,

25   he let us down, he kept reassuring us the money is safe,
```

1  we should keep this between ourself, not get lawyers

2  involved.  I still have a hard time believing Matt would

3  ever do this to us.  At 75 years of age, I was always

4  taught you should trust people.  I guess that is no

5  longer true.  Matt seemed like such a nice guy.

6          Scott Charleston, wife Nancy, I believe Matt

7  Jones lied to me as well as to many other victims,

8  repeatedly asking the whereabouts of our money.  After

9  promising to keep our funds safe in a trust account, he

10 sent it somewhere else, claiming that it was still safe

11 in Capital Insurance accounts offshore.  That was a lie,

12 as was his story about FBI freezing our assets in light

13 of 9-11.  While he promised to return our money, he was

14 apparently doing the same thing Nickels and Gomez,

15 gambling our cash in Zanetics and other cash.  Matt

16 Jones never trusted us about the truth of our money.

17 Our retirement plans were previously based on paying off

18 our first and second mortgage by 2026.  That schedule

19 has been pushed back at least eight years, mostly due to

20 expanding the second to cover the losses.  The fact that

21 Matt Jones spent all of our money on all of his

22 pleasure, or worse hidden his money with relatives or

23 his wife is the reason I feel Matt should spend a

24 significant amount of time incarcerated.

25          Paul J.  Matt Jones violated the basic

1    friend principle.  For example, for 24 months, he

2    promised he was telling the truth about paying back my

3    $10,000.  Now it is very clear Matt spent my money and

4    had no intention of paying it back.

5            Rick Lockheart, as a result of my limited

6    ability to invest the money that I've lost could effect

7    my livelihood and my retirement in my old age.

8            We will make copies of all of these

9    available to you, Mr. Ellis.  Just wanted Mr. Jones to

10   hear a little bit of what some of the people that were

11   involved with him have to say to the Court.

12           Mr. Jones, you've heard what everyone else

13   has had to say.  You've heard what the attorneys have

14   had to said in this case.  You have an absolute right to

15   make a statement prior to the Court imposing sentence.

16   This is your opportunity, what would you like to say?

17           THE DEFENDANT:  Yes, sir.

18           Thank you, Your Honor, for giving me an

19   opportunity to approach you before you sentence me.

20           But, number one, I'd just like to say I

21   think everyone who got involved in this is deeply sorry.

22   I'm not talking not only about myself, the victims,

23   anyone who was affected by this.  I think there's a lot

24   of information that has not came out.  There's a lot of

25   information we just found out, and I'm not sure if

1  Alan's passed that on to you or not.  There's a lot of

2  forged documents we just found out from Mr. Burnett that

3  actually he's the person who contacted all of these

4  people.  I only contacted them after I found out that

5  this whole thing was a scam and then figured out this

6  whole situation, what was going on.  But still, I think

7  if -- I've always looked at it as our responsibility.

8            When my and my wife and I got divorced, a

9  lot of times, people come up to you and they look you in

10 the eye and they go, What happened, everything looked so

11 peachy-keen on outside, what happened?  And I think a

12 lot of people will spend the next 20 minutes talking

13 about how bad, you know, the other person, and what the

14 other person did to make the divorce happen.  But I

15 don't do that.  I'm a person that does take

16 responsibility, and I've never said I do not take

17 responsibility for what happened here.  I think the

18 amount of responsibility, I think, should be looked at.

19 I think, if you looked at the situation of who contacted

20 who, who was in this thing, there's a lot of information

21 that we have right now at our disposal that we did not

22 have six months from now that, we did not have 12 months

23 from now, that we just actually got a few weeks ago, and

24 that I'm talking about those forged documents that does

25 show part of my innocence.  I never said, Hey, I'm 120

1    percent not guilty.  I admitted what I've done from day

2    one, and I've stood up and I've said, This is what I've

3    done but this is what I didn't do.

4            But my heart still goes out to anyone who

5    got involved in this thing.  This thing completely

6    stinked.  I did my best, as several people, to try to

7    investigate.  I have hired several private

8    investigators.  I hired -- my brother's a police officer

9    up in Bellingham, he checked the documentation.  We did

10   a bunch of things to try to figure out, and I didn't get

11   anyone involved until I was reasonably thinking this

12   thing was good.  I myself was shown tons of false

13   documents that I relied upon.  And that, once I saw

14   those documents, moved ahead and got these people

15   involved.

16           But, again, just like I was trying to

17   explain, responsibility does lie with and I do accept

18   responsibility.  Exactly how much, I think I cannot wait

19   until our appeal to go through and hopefully to get a

20   trial, and I think at that point you and everyone will

21   start seeing exactly how much responsibility I should or

22   should not take.

23           Again, I knew a lot of these people.  I did

24   not know them by like they were my best friends.  I knew

25   of these people, I should say.  And all these people

1    were good people.  And I think, in the end, that someone

2    has to go down, someone has to take responsibility.

3              Also, I'd also like the Court to look at, of

4    the four major people who started this investment scam,

5    the four people, Dr. Conway, the one of the people

6    actually got 14 months.  And I think everyone would see

7    that she did a lot -- she should share a lot more

8    responsibility on this than I have as being one of the

9    victims, myself to begin with.

10             But, again, my heart goes out.  I do accept

11   responsibility, and I ask you for lenience.  Thank you.

12             THE COURT:  All right.

13             Post-Booker, the Court is required to set

14   out a guideline range and go through the calculations

15   prior to imposing what should be a reasonable sentence

16   in this specific case based on the consideration of all

17   the factors including the factors in 3553A.

18             Let me understand that I believe everyone is

19   in agreement that Mr. Jones has no prior criminal

20   history, thereby placing him in a criminal history

21   category.  I giving him credit for acceptance of

22   responsibility, which I think is kind of an iffy factor

23   in this particular case.  But, assuming so, total

24   offense level would be 21.  Calls for an advisory

25   imprisonment range of 37 to 46 months in custody, up to

1    three years of supervised release, probation is not

2    authorized, a potential fine range of $7,500 to $75,000.

3            In imposing any sentence, the Court is

4    required post-Booker to look at the factors set out in

5    3553A, that includes the nature and circumstances of the

6    offense.  In this case, a large scale scheme taking well

7    over $1 million from many people, money that was then

8    taken as indicated by the government and almost

9    immediately spent or began spending by Mr. Jones for his

10   own purposes, including buying a piece of property in

11   one of our islands that had a golf course on it.  The

12   Court is also to look at the history characteristics of

13   the defendant as indicated that is definitely in his

14   favor, no prior criminal history.  There was a series of

15   business transactions involved previously in this area.

16   While some legal entanglement, nothing of any criminal

17   nature for the Court to consider.

18           The Court also looks at the need for the

19   sentence to reflect the seriousness of the offense, to

20   promote respect for the law, to provide just punishment

21   for that particular offense.  The Court looks at the

22   need for the sentence to afford adequate deterrence to

23   others through criminal conduct, the need for the

24   sentence to protect the public from any potential

25   further crimes of the defendant, the need to provide the

1    defendant with educational and vocational training, any

2    other correctional treatment in the most effective

3    manner.  The Court is to look at the entire universe of

4    sentences available, the need to provide restitution to

5    victims, as well as the need avoid unwarranted sentence

6    disparity among defendants involved in similar conduct,

7    to those who have similar records.

8            The Court will impose the following sentence

9    in view of considering all of those factors and

10   characteristics in this case.  The Court will set

11   supervised release at three years.  Restitution in the

12   amount, I believe is $1.13 million.  Mr. Currie has set

13   out --

14           MR. CURRIE:  The actual amount that is

15   attached to the schedule is $1,136,200.

16           THE COURT:  All right.  The restitution will

17   be set at that amount.

18           In view of the large amount of restitution,

19   and his current financial situation, the Court will

20   waive the imposition of any fine.  The Court must and

21   will impose the $100 special assessment for this single

22   count that he pled guilty to.

23           He is to cooperate in the collection of DNA

24   as directed by probation.  He will be prohibited from

25   possessing any firearms or destructive devices as

1  defined by statute.  He will submit to mandatory drug

2  testing.  He will submit to not more than eight valid

3  drug tests per month.  He will submit to search of his

4  person, his residence, his office, property, storage

5  units or vehicles, conducted in a reasonable manner at a

6  reasonable time as set by probation.  He will provide

7  probation with access to any and all requested financial

8  information, including authorization to conduct credit

9  checks and obtain copies of his Federal income tax

10  returns.

11          He will maintain no more than a single

12  checking account in his name.  He will deposit into that

13  account all income, all monetary gains, all proceeds and

14  make use of that account for all payment of personal

15  expenses.  Of course, disclosure of that account must

16  also be given to probation.  If he maintains an interest

17  in any business or enterprise, he shall upon request

18  surrender and or make available for review any and all

19  documents of that business or enterprise to probation.

20          He will disclose all assets and liabilities

21  to probation.  He is not this transfer nor to sell or

22  give away or convey any asset without first consulting

23  with probation.

24          He is prohibited from incurring any new

25  credit charges, opening any new lines of credit,

1    obtaining loans without the prior approval of the United

2    States' Probation.

3              He is not to be self-employed nor be

4    employed by friends, relatives, associates or people

5    previously known to him unless he's given approval by

6    U.S. Probation or the Court.  He will not accept or

7    begin employment without the prior approval by US

8    Probation.  Employment will be subject to continuous

9    review and verification by US Probation.  He is not to

10   work for cash, and his employer shall provide regular

11   pay stubs with the appropriate deductions for all taxes.

12             I indicated that the total offense level is

13   Level 21, calling for an advisory imprisonment range of

14   37 to 46 months.

15             As the Court has previously indicated, I'm

16   not totally convinced Mr. Jones is truly sorry for his

17   actions in this particular case.  If he is not given

18   credit for acceptance of responsibility, or if he was

19   even given two points rather than one point, his

20   advisory imprisonment range would jump up.  If he was,

21   say, given two points instead of three, it would be 41

22   to 51.  If he was given no credit, he'd be looking at 51

23   to 63, but obviously a five year cap.  While he says he

24   takes responsibility, I believe that he uses the fact

25   that he was a victim in the beginning as a crutch.

1    Probation points out that, while there is no dispute

2    that he was a victim, and he recruited his family and

3    friends, who initially invested over a quarter million

4    dollars in this case in the Miracle Car Deal, he later

5    recruited investors in what I believe to be an

6    investment opportunity, but he similarly did not invest

7    the money as promised them.  The Court feels that he

8    continues to blame Mr. Burnett for not telling the

9    investors that half the money would be paid to him for

10    his services, in contrast to his statements, having

11    victim after victim having reported speaking directly to

12    him, and he told them how his money was kept safe in a

13    vehicle or trust account until the vehicles would be

14    delivered.

15            In addition, the Court feels that at the

16    same time he was recruiting investors and spending their

17    money, he victimized several other people.  Burnett

18    indicates he was not paid for his services.  The Court

19    feels he may have also victimized several credit card

20    companies and credit services, including Bank of

21    America, when he took his Lincoln Navigator out of the

22    country, where it remains today.  Despite efforts to

23    return that vehicle, no efforts have been made to do so

24    by the defendant.  The Court agrees with probation that

25    all of this activity shows someone whose conduct

1  displays an obvious disregard for his victims and

2  creditors in general.

3          The Court is satisfied that a mid-range

4  sentence would be a reasonable sentence here.  The Court

5  is giving him credit for his acceptance of

6  responsibility, will impose 42 months in custody.

7          Mr. Currie, do you have the appropriate

8  judgment form?

9          MR. CURRIE:  I do, Your Honor.

10          Is the defendant remanded?

11          THE COURT:  He will be remanded into custody

12  today, yes.

13          MR. ELLIS:  Your Honor, I would ask for a

14  self-surrender.

15          THE COURT:  He will be remanded today, Mr.

16  Ellis.

17          MR. ELLIS:  Well, I guess my next question

18  regarding bail pending appeal was moot in light of that.

19          THE COURT:  Correct.

20          MR. ELLIS:  So can I make the oral motion

21  for bail pending appeal at the same time so the Court

22  can rule on it?

23          THE COURT:  That will be denied.

24          MR. ELLIS:  Would the Court recommend to the

25  Bureau of Prisons, recognizing it's only a

1    recommendation, that he be designated to the federal

2    prison camp at Sheridan, Oregon for the service of his

3    sentence, since it is the closest facility to his

4    residence?

5              THE COURT:  Does he have a second choice at

6    all?  The only reason I say that, Mr. Ellis, is, in all

7    fairness to you and him, the last few times we've

8    recommended Sheridan, we've gotten word back that

9    Sheridan is absolutely full.  So they're sending people

10   to other places.  If he wishes, I have no problem with

11   making a recommendation to Sheridan, but I think he

12   probably should put at least a second designation.

13             MR. ELLIS:  Can Your Honor indulge us for

14   just a moment?

15             THE COURT:  Sure.

16             MR. ELLIS:  The federal prison camp at

17   Lompoc, California.

18             THE COURT:  No objection.

19             MR. ELLIS:  Also, Your Honor, the Court

20   imposed a mandatory drug test condition of supervised

21   release.  I don't think there's any evidence that

22   there's any type of drug history with Mr. Jones.

23   Indeed, quite the opposite, he's an athlete.  Not that

24   athletes don't use drugs, steroids.  But I really

25   wondered whether that's necessary.

1          THE COURT:  Ms. McGlynn, let me ask you if

2    you'd comment.

3          PROBATION OFFICER:  The mandatory drug test

4    is three tests over the course of supervision unless

5    otherwise indicated that the defendant has a drug issue.

6    So he would only be taking three tests; and, if those

7    were negative, it would end there.

8          THE COURT:  As Mr. Ellis indicates, I saw

9    nothing in there that indicates drug use or a drug

10   problem with Mr. Jones.

11         PROBATION OFFICER:  I did not find anything

12   with my investigation.

13         THE COURT:  So, as you indicated, that would

14   be, as he goes on supervision, that would be the case,

15   and then that would be it?

16         PROBATION OFFICER:  That's correct.

17         THE COURT:

18         All right.  Mr. Jones, Mr. Currie is filling

19   out the judgment form that should reflect the sentence

20   just imposed by the Court.  It will be handed to Mr.

21   Ellis to review, make sure that it correctly reflects

22   that sentence.  While you entered a plea to the single

23   count down below, the other three counts will be

24   dismissed as part of this plea.  You are not able to

25   appeal the entry of that plea other than appeal the

withdrawal, the motion to withdraw your plea of guilty.
You will be allowed to do that.

        You do have the absolute right to also
appeal the sentence this Court has just imposed.  If you
wish to do so, just let Mr. Ellis know, he knows fully
well how to start that process.

        You don't even have to go through Mr. Ellis
if you don't want to, you can go through the clerk of
our court, they can start that process for you at no
cost to yourself.

        The critical aspect of all this is, if you
do not file your Notice of Appeal 10 days from today,
you may forever give up your right or waive your right
to do that.  Do you understand?

        THE DEFENDANT:  Yes, sir.

        MR. ELLIS:  Your Honor, I would ask the
Court to direct the clerk to file the Notice of Appeal.

        THE COURT:  All right.  We will do so.

        MR. ELLIS:  And, finally, may I be granted
leave to withdraw from the case in light of that?

        THE COURT:  Certainly.

        MR. ELLIS:  Thank you, Your Honor.

        I've reviewed this, Your Honor.

        MR. CURRIE:  May I approach, Your Honor?

        THE COURT:  You may approach.

1            Counsel, as the proposed judgment accurately

2    reflects the sentence proposed by the Court, the Court

3    has signed and dated it.

4            If you have nothing further, we will be at

5    recess.

6            (3:02 p.m., Proceeding Recessed.)

7

8

9

10                        CERTIFICATE

11

12

13        I, Susan A. Zielie, Official Court Reporter, do
     hereby certify that the foregoing transcript is correct.

14

15                    /S/ SUSAN A. ZIELIE, RPR, CCR

16                    _____

17                    Susan A. Zielie, RPR, CCR

18

19

20

21

22

23

24

25